UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ORGANIC ENERGY CONVERSION COMPANY, a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>FLAMBEAU RIVER PAPERS, LLC, a Wisconsin limited liability company; FOUNTAINHEAD ENGINEERING, LTD., a Michigan limited liability company,<br><br>Defendants. | CASE NO. C09-5008BHS<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY |

This matter comes before the Court on Defendants' motion to dismiss, or in the alternative, to stay. Dkt. 6. The Court denies Defendants' motion for the reasons stated herein.

## I. BACKGROUND

Defendants request this Court to abstain from exercising jurisdiction over this case because Defendant Flambeau River Papers, LLC ("Flambeau") first filed a state court action against Plaintiff in Wisconsin.

ORDER - 1

### A. The Wisconsin Action

On June 19, 2008, Flambeau, Johnson Timber Corporation and William Johnson (collectively "Wisconsin Plaintiffs") filed a complaint against Organic Energy Conversion Company ("OECC") in Price County Circuit Court in Wisconsin. Dkt. 6-2. Johnson Timber is a Wisconsin corporation, and Mr. Johnson is its principal shareholder and chief executive officer. Mr. Johnson, a resident of Wisconsin, is also the CEO of Flambeau, as well as the sole member of Summit Lake Management, LLC, which is the managing member of Flambeau.

According to the complaint, in February 2008, OECC and Flambeau entered into a non-binding memorandum of understanding ("MOU"), which called for Flambeau to make a payment of $600,000 to OECC that was to be used exclusively by OECC for the development and construction of a specified product. Under the MOU, OECC and Flambeau were to successfully test the product no later than April 1, 2008, and the product was to be delivered to Flambeau's Park Falls, Wisconsin facility no later than May 1, 2008. Flambeau maintains that it paid the initial $600,000 to OECC for production and development of the product.

When it became apparent that OECC could not deliver the product as promised, Mr. Johnson met with individuals purporting to be authorized representatives of OECC in an attempt to find a business solution to the problem. Those discussions led to the signing of a term sheet, which expressed the parties' desire to explore a joint-venture type relationship relating to the product. Under the term sheet, all equipment and other items necessary for completion of the product would be delivered to the Park Falls facility, and OECC would dispatch an authorized representative to the facility to "ensure the successful manufacture and assembly" of the product. The Wisconsin Plaintiffs maintain that the term sheet is a non-binding document "merely setting forth the good-faith intentions of the parties for the structure of the joint-venture relationship. The term sheet explicitly calls for subsequent agreements to be reached and entered into between OECC

and one or more of the [Wisonsin] Plaintiffs, although it does not identify which specific parties are to be participants in the contemplated joint venture." *Id*. at 7. The term sheet also calls for a subsequent operating agreement to be entered into as part of the joint venture relationship. The Wisconsin Plaintiffs maintain that the parties have not negotiated or entered into an operating agreement.

Additionally, the termسheet provided that once the operating agreement has been executed and the joint venture established, Mr. Johnson and/or one of the other Wisconsin Plaintiffs was to pay OECC $1 million in ten equal installments. The Wisconsin Plaintiffs maintain that, although no joint venture had been established, Mr. Johnson, "as a gesture of good faith," caused the first installment to be made to OECC on May 2, 2008.

On May 28, 2008, Mr. Johnson received information from Butch Sadikay, who identified himself as a 50% owner of OECC, "caution[ing] Mr. Johnson from continuing to do business with OECC without further discussion between them." *Id*. at 8. Based on this information, as well as a subsequent phone conversation, the Wisconsin Plaintiffs believed that "it [did] not appear . . . that the individuals who signed the MOU and the term sheet were authorized to do so on behalf of [OECC]." *Id*.

Flambeau contends that it demanded an accounting of the $600,000 because OECC never completed the product. Flambeau further maintains that OECC has requested an installment payment pursuant to the term sheet, and that OECC characterized the term sheet as a "binding contract."

In the Wisconsin action, the plaintiffs seek a declaratory judgment that they owe no contractual obligations requiring payment to OECC. The Wisconsin Plaintiffs also seek an accounting for the $600,000 Flambeau allegedly paid to OECC.

OECC asserted several affirmative defenses in its answer, including (1) lack of personal jurisdiction, (2) improper jurisdiction and venue because key discussions and agreements took place in Washington where key witnesses still reside, and (3) improper jurisdiction and venue because Flambeau signed a written agreement promising that

disputes arising out of the terms of the parties' relationship could only be commenced in Pierce County, Washington. *Id*., 14-15.

**B.     OECC's Washington Action**

On November 10, 2008, OECC filed a complaint against Flambeau and Fountainhead Engineering, Ltd. ("Fountainhead"), in Pierce County Superior Court in Washington. Dkt. 1, 9-13. On January 8, 2009, Defendants Flambeau and Fountainhead removed the Washington action to this Court. *Id*., 1-5. OECC alleges two causes of action: (1) breach of contract based on Flambeau's and Fountainhead's alleged breach of a mutual non-disclosure agreement ("MNDA"), and (2) conversion based on Flambeau's and Fountainhead's alleged conversion of OECC's intellectual or other property.

According to this complaint, OECC developed "valuable and confidential technology and process for non-thermal drying of biosolids and biomass." *Id*. at 10. This technology and process was the subject of a confidential patent application filed with the United States Patent and Trademark Office on December 12, 2007.

OECC agreed to give access to this patent application to Flambeau and Fountainhead for the purpose of furthering a possible business relationship between the parties to develop, manufacture and sell a non-thermal biomass dryer to the timber industry (referred to by the parties as the "Possible Transaction"). To that end, the parties entered into the MNDA, which is dated December 11, 2007. The MNDA provides in part:

> Neither Party will use, or permit any of its Representatives to use, any of the other Party's Confidential Information for any purpose other than in connection with the evaluation of the Possible Transaction, and neither Party will make any such Confidential Information available to any Person for any other purpose whatsoever.

Dkt. 1 at 16.

The MNDA also includes a provision that requires "any legal proceedings arising out of the terms of [the MDNA] . . . be commenced in the courts located in Pierce County [Washington]." *Id*. at 21.

OECC alleges that Flambeau and Fountainhead "repudiated the existence of any business relationship with [OECC]" and claimed to have built their own non-thermal biomass dryer with the assistance of Mr. Johnson and Johnson Timber. OECC maintains that Defendants' biomass dryer wrongfully uses OECC's confidential information in violation of the MNDA.

### C. Defendants' Motion

On January 9, 2009, Defendants filed the instant motion. Dkt. 6. On January 29, 2009, OECC filed a response. Dkt. 14. On February 4, 2009, Defendants filed a reply. Dkt. 17.

## II. ABSTENTION UNDER *COLORADO RIVER*

In rare circumstances, a federal court may stay its proceedings in deference to pending state proceedings. *See Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1372 (9th Cir. 1990). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). If the parallel state-court action will be an adequate vehicle for the complete and prompt resolution of the issues before the parties, abstention may be appropriate. *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005). However, if there is any "substantial doubt" as to whether the state proceedings will provide complete and prompt resolution of the issues presented in the case, a federal district court should not abstain from exercising jurisdiction. *Id.* at 1037.

Abstention may be appropriate even if the two proceedings do not involve identical issues and parties, so long as the two actions involve "substantially similar" issues and parties. *See Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989); *see also American Guar. & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 2006 WL 3499342, *2 (W.D. Wash. 2006).

Additionally, a district court should consider the following factors in determining whether to stay proceedings: (1) the desirability of avoiding piecemeal litigation; (2)

whether the state proceeding is adequate to protect the parties' rights; (3) the order in which the forums obtained jurisdiction; (4) whether either the state or federal court has assumed jurisdiction over a *res*; (5) the relative convenience of the forums; and (6) whether state or federal law controls. *See Nakash*, 882 F.2d at 1415. "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *Id*. (*quoting American Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988)). A trial court may also consider how far a pending state action has progressed in deciding whether to abstain from exercising jurisdiction. *See United States v. Adair*, 723 F.2d 1394, 1405 n.8 (9th Cir. 1983) (where both the state and federal proceedings are in their infancy, the federal court should defer to the state proceeding), *but see Travelers*, 914 F.2d at 1369 ("since at the time of the district court's stay order the state court had made no rulings whatsoever in regard to [the] dispute, there [was] no certainty that duplicative effort would result").

With regard to the fourth factor under *Nakash* listed above, the first-to-file rule may be invoked when a complaint involving the same parties and issues has already been filed in another district. *Alltrade, Inc. v. Uniweld Products, Inc*., 946 F.2d 622, 625 (9th Cir. 1991). The first-to-file rule is discretionary. *Id*. at 628. Courts have also recognized exceptions to the first-to-file rule, including whether a party engaged in bad faith, forum shopping, or filed an anticipatory suit. *Id*.

## III. DISCUSSION

Flambeau moves the Court to abstain from invoking jurisdiction over OECC's claims because Flambeau filed a substantially similar claim against substantially similar parties in Wisconsin, before OECC filed the Washington action. According to Flambeau:

> Both the Wisconsin and Washington actions require an answer to one central question: what, if any, are Flambeau and OECC's duties to each other under their potential business relationship? Those duties determine whether Flambeau owes any money to OECC, which depends on whether Flambeau retained, improperly or otherwise, the value of OECC's intellectual property for its own use or, instead, is using independently developed technology that does not utilize any of OECC's intellectual property.

Dkt. 6 at 16.

In addition, Flambeau contends that the Wisconsin and Washington actions involve substantially similar parties, despite OECC's inclusion of Fountainhead as well as its exclusion of Johnson Timber and Mr. Johnson as parties in the Washington action. *See* Dkt. 17 at 3 (Flambeau's response, citing *American Guaranty* and *Nakash, supra*). Flambeau maintains that both actions address the issue of the business relationship between Flambeau and OECC, and characterizes Fountainhead as a "gratuitous party" who merely served as a consultant to Flambeau. Additionally, Flambeau argues that any claim OECC had against Fountainhead could have been addressed by naming it as a counterclaim defendant in the Wisconsin action.

In opposition, OECC contends that abstention is not appropriate because the Wisconsin action does not involve the MNDA signed by Flambeau and Fountainhead "or any issue regarding any duty of confidentiality or handling of confidential property which are central issues in OECC's Washington action." Dkt. 14 at 3. OECC opposes Flambeau's motion for four main reasons: (1) the Wisconsin action involves different parties, different contracts and different legal issues, (2) the Wisconsin plaintiffs have done nothing to advance their case since filing the complaint, (3) OECC's claims in this case were not discovered until after the Wisconsin action was filed, and (4) the Wisconsin filing was bad faith forum shopping. *Id*. OECC argues that a determination by the Wisconsin state court that the parties never contracted to participate in a joint venture would not resolve the issue of whether Flambeau and Fountainhead violated the MNDA or converted OECC's property.

**A.     Avoiding Piecemeal Litigation and Protecting the Parties' Rights**

Whether this Court should abstain from exercising jurisdiction is a close question, and the Court recognizes the need to avoid piecemeal litigation. However, Flambeau has not demonstrated that this case presents the rare exception to the general rule that a federal district court should not abstain from exercising jurisdiction. Based on the record

developed thus far, there is substantial doubt as to whether the Wisconsin action will provide complete and prompt resolution of the issues raised in the Washington action. While the MNDA, the MOU, and the term sheet appear to be interrelated, it is not clear that resolution of the dispute regarding the MOU and term sheet will resolve the dispute regarding the MNDA. Even assuming that the Wisconsin court could resolve Flambeau's claims regarding the MOU, the term sheet, and the accounting of the $600,000 it paid OECC, it is not clear that the Wisconsin court could resolve OECC's claim that Flambeau and/or Fountainhead used confidential information in violation of the MNDA.

First, the parties agreed to resolve disputes arising out of the MNDA in Pierce County, Washington.[1] The MNDA is the only written agreement between the parties that is before this Court; neither party has directed the Court to a copy of the MOU or term sheet in the record. Based on this choice-of-venue provision, there is substantial doubt as to whether the Wisconsin court may exercise jurisdiction over OECC's claim that Flambeau and/or Fountainhead wrongfully used confidential information. In addition, there is substantial doubt that OECC's claims constituted compulsory counterclaims in the Wisconsin action. *See* Fed. R. Civ. P. 13(a)(1)(B) (counterclaim is not compulsory if it requires the addition of a party over whom the court cannot acquire jurisdiction).

Second, Flambeau has not demonstrated that the parties in the two actions are substantially similar. The Washington action names Fountainhead as a defendant, which is not a defendant in the Wisconsin action. At this time, the Court is not persuaded that Fountainhead's status as a mere "consultant" makes it a nominal party for purposes of the abstention analysis. Fountainhead was a signatory to the MNDA and is alleged to have improperly used or mishandled confidential information. In addition, Flambeau has not demonstrated that OECC's failure to name Fountainhead as a counterclaim defendant in

---

[1] Flambeau argues that Flambeau did not actually sign the MNDA. Dkt. 6 at 8. This does not appear to weigh in favor of granting dismissal or a stay. If Flambeau can demonstrate that it was not an actual party to the MNDA and obtain dismissal from this action, Fountainhead, which is not party to the Wisconsin action, may remain a defendant in this case.

the Wisconsin action weighs in favor of this Court abstaining from exercising jurisdiction. The Court is also not persuaded by Flambeau's argument that OECC engaged in forum-shopping because the MNDA contains a provision requiring disputes arising from the MNDA to be filed in Pierce County, Washington.[2]

### B. Remaining *Nakash* Factors

The Court concludes that no other *Nakash* factors weigh in favor of this Court staying or dismissing this case at this time. While there is no dispute that Flambeau first filed an action in state court, the Court has concluded that Flambeau has not demonstrated that the Washington action involves substantially similar parties or issues. The Court also finds that the fact that both actions have not been extensively litigated weighs in favor of not dismissing or staying the case. While the Court recognizes Flambeau's cited authority, *Adair*, *supra*, other Ninth Circuit decisions have considered abstention appropriate where state proceedings have proceeded *far beyond* the federal proceeding. *See Travelers, supra*; *see also Nakash*, 882 F.2d at 1415. Based on the current record, it is not clear that there is a significant risk of duplicative efforts. In addition, neither court has invested much time in furthering this litigation.

The remaining three *Nakash* factors were not addressed by the parties. First, it does not appear that there is any jurisdiction issues with regard to a *res*. Second, the parties did not fully address the issue of relative convenience of the two forums. Finally, although this case involves state law issues regarding contract and tort law, Flambeau has not shown that this weighs in favor of abstention.

## IV. ORDER

Therefore, it is hereby ORDERED that

---

[2] The Court is also not persuaded that OECC has shown that Flambeau engaged in forum shopping.

ORDER - 9

Defendants' motion to dismiss, or in the alternative to stay (Dkt. 6) is **DENIED** without prejudice.

DATED this 17th day of March, 2009.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 10